# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>

**TROY BULLOCK,**

　　　　　Plaintiff,

v.

**OCWEN LOAN**
**SERVICING, LLC, ET AL.**

　　　　　Defendants.

</td><td>

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

</td><td>

Civil No. PJM 14-3836

</td></tr>
</table>

## <u>MEMORANDUM OPINION</u>

Troy Bullock, purportedly acting *pro se*,[1] brought this action in the Circuit Court for Prince George's County, Maryland, against Ocwen Loan Servicing, LLC ("Ocwen"), Deutsche Bank National Trust Company ("Deutsche Bank"), Homeward Residential, Inc. ("Homeward"), and BWW Law Group, LLC ("BWW"). BWW removed the action to this Court. ECF No. 1. Bullock subsequently amended his Complaint. ECF No. 16.

Based on the events surrounding a foreclosure action against a property he formerly owned ("the subject property"), Bullock's Amended Complaint alleges violations of the Truth-in-Lending Act, 15. U.S.C. § 1641 *et seq.* ("TILA"), the Fair Debt Collection Practices Act, 15

---

[1] Defendants allege that Bullock may be receiving legal assistance in this matter from a *non*-attorney named Thomas Alston, in the form of ghostwritten pleadings. Alston has a history of filing ghostwritten pleadings in this Court. *See, e.g., Alston v. Creditors Interchange Receivable Mgmt., LLC*, 2012 WL 4370124, at \*1 (D. Md. Sept. 21, 2012) (Chasanow, C.J.) (vacating orders to proceed in forma pauperis, entering judgment against plaintiff for costs and judgments in eleven cases filed by Alston alleging Fair Credit Reporting Act claims). The Court's review of the subject matter and style of the present pleadings and prior Alston cases strongly suggests that Alston may be involved in the instant case, as well as two other actions currently pending before this member of the Court. *See Bullock et al v. Pulte Home Corporation et al.*, Civ. No. 15-903 (D. Md. Mar. 30, 2015); *Cole v. Bank of America, N.A.*, Civ. No. 15-904 (D. Md. Mar. 30, 2015). Particularly troubling, Defendants have submitted a document appearing to show that Alston has entered into a three-year lease agreement with Bullock for the residential property that is the subject of this lawsuit. *See* ECF No. 31, at 16. The lease agreement appears to have been signed on July 1, 2014, the date of the foreclosure sale at issue, and purports to grant Alston a three-year lease at $500 per month rent, plus $36,000 in "other valuable services." Defendants aver that such "other services" refer to legal services provided by Alston in this case. Counsel for Defendants in this and the other pending cases have requested a status conference and for the Court to permit additional factual inquiry into the extent of Alston's involvement in these cases, which the Court will grant by separate Order.

U.S.C. § 1692 *et seq.* ("FDCPA"), the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 *et seq.* ("MCDCA"), the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.* ("MCPA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"). He also alleges common law breach of contract and conversion against Ocwen and Deutsche Bank.

Defendants have filed Motions to Dismiss. ECF Nos. 17, 18. Bullock has moved for Partial Summary Judgment as to the RESPA claim against Ocwen, ECF No. 24, which the Court stayed pending determination of the Motions to Dismiss, ECF No. 28. And Bullock has moved for leave to file a Second Amended Complaint, ECF No. 27, alleging other statutory violations, including violations of the Fair Credit Reporting Act,  15 U.S.C. § 1681 *et seq.* ("FCRA"), which the Defendants oppose.

## I.

The Court begins with a brief factual and procedural history.

According to the Amended Complaint, on March 15, 2006, Bullock entered into a mortgage agreement with Option One Mortgage Corporation with respect to a residential property located at 13302 Williams Drive in Brandywine, Maryland. The agreement refinanced two prior mortgage loans. ECF No. 11-3. The accompanying promissory note was in the amount of $213,750. ECF No. 11-2. Bullock made payments on the loan from 2006 to 2012. Amended Compl. ¶ 8, ECF No. 16.

Homeward was the loan servicer for a period beginning at least as early as 2012 and continuing through March 31, 2013. *See id.* ¶¶ 9-13. In early 2012, Bullock applied for a loan modification, but Homeward denied the application. *Id.*  ¶¶ 9-10. On November 26, 2012,

Homeward issued Bullock a formal notice indicating that he was in default for failure to pay the required installments due. *Id.* ¶ 14.

On March 1, 2013 Homeward transferred servicing to Ocwen. *Id.* ¶ 15.

On December 30, 2013, the Sand Canyon Corporation (formerly known as Option One Mortgage Corporation) assigned the deed of trust on the subject property to Deutsche Bank, as trustee for a securitized pool of loans.[2] ECF No. 11-4. The deed of trust was recorded January 15, 2014. *Id.* On January 23, 2014, Ocwen executed a Substitution of Trustee document naming several BWW attorneys as their trustees. Amended Compl. ¶ 19. On February 14, 2014, BWW filed a foreclosure action on the subject property in the Circuit Court of Prince George's County, Maryland. *Id.* ¶ 20. By February 18, 2014, BWW had served Bullock by both mailing and posting. ECF No. 11-7. On June 12, 2014, BWW mailed Bullock a letter informing him that a foreclosure sale would take place on July 1, 2014. ECF No. 11-8, at 3. Deutsche Bank purchased the property at the foreclosure sale on July 1, 2014 for $89,000. ECF No. 17-3

On October 20, 2014, in the Prince George's County Circuit Court foreclosure proceeding, Bullock filed a Motion for a Temporary Restraining Order and Preliminary Injunction, or in the Alternative, a Motion to Stay and Dismiss the Foreclosure Action. ECF No. 11-5. The same day, Bullock opened a new case in Prince George's County Circuit Court and filed the Complaint that would eventually be removed to this Court.

The Court's review of the publicly-available Circuit Court docket in the foreclosure action[3] indicates that the Circuit Court has since overruled Bullock's exceptions to the foreclosure sale, has ordered that the case continue in due course, and has denied Bullock's

---

[2] The securitized pool of loans is called Soundview Home Loan Trust 2006-OPT3 and Asset Backed Certificates, Series 2006-OPT3.
[3] *See WBGLMC vs Bullock*, CAEF14-04083 (Cir. Ct. Prince George's Cty., Md. Feb. 14, 2014), *available at*. http://casesearch.courts.state.md.us/casesearch/inquiryByCaseNum.jis.

motion to alter or amend the judgment. On April 8, 2015 the Circuit Court issued an order ratifying the sale, and Bullock noticed an appeal to the Court of Special Appeals. On June 22, 2015, the Circuit Court issued an order ratifying the report of the auditor, and closed the case.

The matter, as previously indicated, is before the Court on Defendants' various Motions to Dismiss.

## II.

Federal Rule of Civil Procedure 8(a) prescribes "liberal pleading standards," requiring only that a plaintiff submit a "short and plain statement of the claim showing that [he] is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing Fed. R. Civ. P. 8(a)(2)).   If pleadings allege fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under the heightened pleading standard of Rule 9(b), "[t]hese circumstances are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

While federal courts must liberally construe a *pro se* litigant's claims, this requirement "does not transform the court into an advocate." *United States v. Wilson*, 699 F.3d 789, 797 (4th

Cir. 2012); *see also Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010) (observing the Fourth Circuit considers liberal construction of a complaint is particularly warranted where a *pro se* litigant alleges civil rights violations).   The Fourth Circuit has noted that "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir.1985), *cert. denied*, 475 U.S. 1088 (1986)).

Federal Rule of Civil Procedure 15(a)(2) instructs that the Court should freely give leave to amend a pleading when justice so requires. A motion to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001). If an amended complaint could not withstand a motion to dismiss, a motion to amend should be denied as futile. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).

## III.

The Court addresses Bullock's various allegations.

### A.

### Truth-in-Lending Act Claim

The Complaint alleges that when Deutsche Bank became the new owner in December 2013 of the promissory note, it violated 15 U.S.C. § 1641(g)(1) by failing to notify Bullock that the ownership of the loan had been transferred to it.

Under § 1641(g), parties assuming home loans and thereby becoming new creditors must disclose the assignment to the borrower in writing by a certain date. *See Barr v. Flagstar Bank,*

*F.S.B.*, 2014 WL 4660799, at *2 (D. Md. Sept. 17, 2014). In *Barr*, Judge Bennett of this Court held that the assignment of the Deed of Trust does not trigger the disclosure condition of § 1641(g). Instead, § 1641(g) requires the assignment or transfer of at least the underlying debt. *Id.* at 5. Deutsche Bank argues that Bullock is confusing the promissory note with the deed of trust. Because the assignment that took place in December 2013 was the assignment of the deed of trust, Deutsche Bank avers that Bullock has failed to state a claim for relief.

Bullock, for his part, does not contest that the assignment of debt is the relevant assignment for purposes of § 1641(g), but counters that his Amended Complaint specifically alleges that the debt was contemporaneously assigned with the Deed of Trust—in other words, that the debt was assigned to Deutsche Bank in December 2013. Amended Compl. ¶ 18. Deutsche Bank argues the opposite: that the promissory note was not transferred to Deutsche Bank in December 2013, but at the time the relevant Pooling and Servicing Agreement closed on May 1, 2006. Because § 1641(g) applies only to transfers that preceded the 2009 effective date of the Dodd-Frank Act amendments to TILA that added it, Deutsche Bank argues that it was under no duty under § 1641(g) to provide notice. *See Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 353 (E.D. Va. 2011).

In support of its argument, Deutsche Bank has asked the Court to take judicial notice of the Pooling and Servicing Agreement for Soundview Home Loan Trust 2006-OPT3 and Asset-Backed Certificates, Series 2006-OPT3, a document available on the Securities and Exchange Commission's website.[4] Deutsche Bank represents that this document demonstrates that Bullock's note was in fact transferred to Deutsche Bank in May of 2006 as part of the pool of loans in that securitization. ECF No. 18-1, at 13, 13 n.2. The problem with Deutsche Bank's argument, however, is that the Court has reviewed this Pooling and Servicing Agreement, and

---

[4] *See* http://www.sec.gov/Archives/edgar/data/1359053/000088237706001941/d501480_ex4-1.htm.

can find no indication that Bullock's promissory note was among those hundreds of loans included in this securitization. The document does not appear to contain any identifying information for any of the loans contained therein.

It is quite likely that Deutsche Bank will ultimately be proven correct. Indeed, the Assignment of the Deed of Trust from Option One to Deutsche Bank states that Deutsche Bank was receiving the Deed of Trust in its capacity as the trustee for the Soundview 2006-OPT3 security, ECF No. 11-4, which is consistent with Deutsche Bank's representation that Bullock's promissory note was among those transferred to Deutsche Bank in 2006. But on a Motion to Dismiss, well-pleaded factual allegations in the Complaint must be accepted as true. If a plaintiff pleads sufficiently that both the security instrument and the note were transferred, then his § 1641(g) claim will at least survive a motion to dismiss on that ground. *See Barr*, 2014 WL 4660799, at *4 (citing *Schafer v. CitiMortgage, Inc.*, 2011 WL 2437267, at *6 (C.D. Cal. June 15, 2011) (denying the defendants' motion to dismiss the § 1641(g) claim because the plaintiff alleged that the note and the deed of trust were assigned on the same date to defendants)).

Accordingly, Deutsche Bank's Motion to Dismiss the TILA Claim is **DENIED WITHOUT PREJUDICE**. Deutsche Bank however, is granted leave to adduce proof in support of its position by way of a renewed Motion to Dismiss and/or a Motion for Summary Judgment.

## B.

### Fair Debt Collection Practices Act, Maryland Consumer Debt Collection Act, and Maryland Consumer Protection Act Claims

Bullock's FDCPA, MCDCA, and MCPA claims share a common proposition: that the Defendants are liable because the note and the deed of trust are invalid, such that Defendants lacked the authority to enforce them.

With respect to the FDCPA, Bullock alleges that Ocwen and BWW violated 15 U.S.C.A. §§ 1692e, 1692f, which provide that a debt collector may not use any false, deceptive, or misleading representation or means, or use any unfair or unconscionable means in connection with the collection of any debt. Bullock alleges that when Ocwen stated that it was the Beneficiary under the Deed of Trust in the Substitution of Trust document, Amended Compl. ¶ 40, it falsely represented that it was the "holder" of the note with legal authority to collect payments under the note, assess interest and fees on the note, declare the note in default and cause a foreclosure action to be initiated, *id.* ¶ 41. Bullock alleges that BWW used false, deceptive, unfair, or unconscionable means to collect a debt by initiating a foreclosure action without being appointed substitute trustee by the lender or holder of the note, *id.* ¶ 42, and by tacking on foreclosure and attorney fees and costs without being authorized to conduct such action by the holder of the note, *id.* ¶ 43.

With respect to the MDCPA, Bullock alleges that Ocwen, BWW, and Deutsche Bank violated Md. Code Ann., Com. Law § 14-202(8), which prohibits a debt collector from claiming, attempting, or threatening to enforce a right with knowledge that the right does not exist. Bullock alleges that Deutsche Bank, Ocwen, and BWW claimed a right to foreclose on the property and to assess interest on the loan when each knew that they lacked possession of the original note and were therefore not qualified as a holder of the note. Amended Compl. ¶¶ 47, 49. Bullock makes the same allegation as to Homeward's claiming the right to declare the note in default, and BWW's claiming a right to collect fees under the note. *Id.* ¶¶ 48, 50.

With respect to the MCPA, Bullock alleges that Defendants[5] violated Md. Code Ann., Com. Law § 13-301(1) which prohibits false or misleading representations which have the capacity to deceive consumers, and Md. Code Ann., Com. Law § 13-303(5), which prohibits

---

[5] The Amended Complaint does not specify which Defendants.

unfair or deceptive trade practices in the collection of consumer debts. Bullock alleges Defendants mislead Bullock to believe that Defendants were entitled to enforce the Note and deed of trust, and by failing to disclose to Bullock that they were not in possession of the original note. Amended Compl. ¶¶ 53, 54.

All three claims for relief can be aptly summed up as follows: Defendants violated the FDCPA, MDCPA, and MCPA because neither Homeward nor Ocwen nor Deutsche Bank nor BWW had the legal authority to enforce the note and deed of trust by declaring Bullock in default, by foreclosing on the property, and by collecting interest and fees incident thereto. The Court finds that all three claims are barred by *res judicata*.

The doctrine of *res judicata*—known in some courts as claim preclusion or direct estoppel—forbids the relitigation of a claim that was decided or could have been decided in a prior suit. *See Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 426 (D. Md. 2012). In Maryland[6] a subsequent claim is barred by the doctrine of res judicata when: (1) the parties in the present litigation are the same or in privity with the parties to the earlier suit; (2) the second suit presents the same cause of action or claim as the first, or the claim could have been raised in the prior suit but was not; and (3) the prior adjudication was a final judgment on the merits by a court of competent jurisdiction. *See Poku v. Fed. Deposit Ins. Corp. as Receiver for Washington Mu. Bank F.A.*, 2011 WL 334680, at *4 (D. Md. Jan. 31, 2011) (citing R & D 2001, LLC v. Rice, 938 A.2d 839, 848 (Md. 2008)).

The first *res judicata* element has been satisfied, because the parties in this proceeding and the foreclosure proceeding are the same (i.e. Bullock and BWW) or are in privity with one

---

[6] Under 28 U.S.C. § 1738, federal courts must give "full faith and credit" to judgments of state courts. Section 1738 does not allow federal courts to employ their own preclusion rules in determining the preclusive effect of state judgments. "Rather, it [. . .] commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982).

another: Homeward, on behalf of Deutsche Bank, declared the loan in default, and transferred servicing to Ocwen, which executed a Substitution of Trustee on behalf of Deutsche Bank that appointed BWW attorneys as their trustees.

The second *res judicata* element—that the second suit presents the same cause of action or claim as the first, or the claim could have been raised in the prior suit but was not—requires some unpacking. There is no doubt that Bullock's FDCPA, MCDCA, and MCPA claims are identical to a claim that could have been raised in the prior suit for preclusion purposes. "Maryland has adopted the transactional approach, which asks whether the claims in this litigation 'arise[] out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *See Snider* at 427-28 (quoting *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008). As previously noted, all three statutory claims are premised on Bullock's contention that the Defendants lacked the legal authority to enforce the note and deed of trust. Accordingly, the statutory claims arise out of the same series of transactions as the transactions at issue in the foreclosure proceedings: *e.g.*, Deutsche bank's ownership of the note, Homeward's and Ocwen's servicing of the note, and Deutsche bank's assignment of the note to BWW for foreclosure proceedings.

Was Bullock's claim that Defendants lacked the legal authority to enforce the note and deed raised or could it have been raised in the foreclosure proceeding? Rule 14-211(a)(3)(B) of the Maryland Rules, Property Sales provides that a borrower may file in a foreclosure action a motion to stay the sale of the property and dismiss the foreclosure action which asserts a defense that challenges the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action. Bullock made no such motion prior to the sale.

Bullock, however, argues that his failure to raise defenses that challenge the validity of the lien or the Defendants' right to foreclose cannot be given *res judicata* effect. Because he never personally appeared in the Circuit Court prior the foreclosure sale, as a result of which the foreclosure action was *in rem* through the foreclosure sale, and only became *in personiam* when Bullock filed his post-sale motion for injunction and post-sale exceptions. Bullock argues that he can relitigate the merits of a prior foreclosure judgment in a subsequent claim for damages, so long as the prior judgment was solely *in rem*. Because Rule 14-305 of Maryland Rules, Property Sales prevents post-sale challenges to the validity of the lien or the right of the Defendants to foreclose, *see Thomas v. Nadel*, 427 Md. 441, 445 (2012), Bullock essentially argues that these challenges were also unavailable to him when he appeared and the foreclosure action became *in personiam*, and cannot now be barred by reason of *res judicata*.

The Court is not persuaded. True, there is some authority from the Maryland Court of Appeals for the proposition that if a foreclosure judgment is a "solely [] *in rem* judgment," a mortgagor can relitigate the validity of the deed of trust and the right to foreclose, even though these were conditions precedent to commencing a foreclosure action in Maryland. *See Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md. 1, 20 (1995). But there is also authority for the proposition that the mortgator's filing of post-sale exceptions to a foreclosure sale—which is what happened here—renders the foreclosure proceeding both *in rem* and *in personam*, thereby precluding separate suits based on the improper actions of the lender that occurred prior the foreclosure sale. *See Tri-Towns Shopping Ctr., Inc. v. First Fed. Sav. Bank of W. Maryland*, 114 Md. App. 63, 73, 75 (1997); *accord Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644 (4th Cir. 2011) (per curiam).

In any event, Bullock's argument is barred by *res judicata* for the additional reason that these FDCPA, MCDCA, and MCPA claims could have been asserted as counterclaims in the foreclosure action. Nothing in the Maryland Rules of Procedure prohibits a mortgagor who—as here—voluntarily appears in a mortgage foreclosure proceeding from filing a counterclaim *Fairfax*, 338 Md. at 21.[7] To be sure, counterclaims are permissive rather than compulsory under Maryland law. *See Rowland v. Harrison*, 320 Md. 223, 233 (1990). But this does not mean that *res judicata* is irrelevant. Maryland has adopted the approach of the Restatement (Second) of Judgments with respect to the preclusive effect of a litigant's failure to assert a counterclaim in a prior proceeding. Under this approach, the court considering res judicata asks whether "[t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." If so, the failure to raise a counterclaim is preclusive. *See Snider*, 906 F. Supp. 2d at 428 (citing Restatement (Second) of Judgments § 22).

Here, as previously noted, Bullock's FDCPA, MCDCA, and MCPA claims are premised wholly on Bullock's allegation Defendants lacked legal authority to enforce the note and deed of trust by declaring Bullock in default, foreclosing on the property, and collecting interest and fees incident thereto. These allegations plainly negate, contradict, and nullify an essential foundation for the judgment of foreclosure. *See Fairfax*, 338 Md. at 31 (holding that in second suit between mortgagor and mortgagee, in which mortgagor sought damages but not to disturb the foreclosure judgment, the mortgagor's allegations that there was no foreclosure-triggering default "negate, contradict, and in that sense nullify an essential foundation" of the previously entered foreclosure

---

[7] The Maryland Court of Appeals so held even though "there are there are innumerable practical difficulties" do docketing a counterclaim by the mortgagor in a mortgage foreclosure proceeding. *Fairfax*, 338 Md. at 21 n.9.

judgment, and were barred by res judicata). As such, the second element of res judicata is satisfied.

Finally, the third *res judicata* element has also been satisfied because the Court's review of the Circuit Court Docket indicates that that Court has issued a final judgment on the merits: it has overruled Bullock's exceptions to the foreclosure sale, denied Bullock's motion to alter or amend the judgment, issued an order ratifying the foreclosure sale, issued an order ratifying the report of the auditor, and closed the case. While Bullock may have noticed an appeal to the Court of Special Appeals, Maryland courts have held that pendency of an appeal does not affect the finality of a judgment for *res judicata* purposes. *See Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 525 (2004).

Accordingly, the Court **GRANTS WITH PREJUDICE** Defendants' Motion to Dismiss Bullock's FDCPA, MCDCA, and MCPA claims.

## C.

### Breach of Contract and Conversion Claims

The Amended Complaint also alleges that Deutsche Bank and Ocwen breached the Deed of Trust by entering Bullock's property without giving him prior notice. *See* Amended Compl. ¶¶ 57-62. The Amended Complaint then alleges that Deustche Bank and Ocwen committed the tort of conversion by instructing their agents to enter the property and remove Bullock's personal property, and that the agents were motivated by malice in so doing. *See* Amended Compl. ¶¶ 63-69.

As the Court has previously noted, under *Iqbal*, a court will accept factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *See* 556 U.S. at 678. Bullock's breach of contract and

conversion claims epitomize the kind of threadbare recital of the elements of a cause of action that runs afoul of *Iqbal*. The Amended Complaint contains not a single further factual allegation material to either claim for relief—for example, the approximate dates, times, and manner of the alleged entry or entries by Deutsche Bank or Ocwen's agents, any description of the agents (including any subcontractor for whom they worked), any description of the property allegedly removed from Bullock's property, any account of Bullock's or other residents' whereabouts during the alleged entries, or any account of communications with Deutsche Bank or Ocwen that Bullock initiated in response to the alleged entry and property removal. The absence of any such details is highly suspicious, given Bullock's claim that he continued to use the property before, during, and after the foreclosure sale. *See* Amended Compl. ¶ 21. The absence of these details is especially dubious in light of the twenty paragraphs of specific factual allegations contained in the Amended Complaint concerning the servicing of his mortgage, the foreclosure proceedings, and his correspondence with various Defendants.

The Court finds that Bullock has failed to state a plausible claim for relief, and will **GRANT WITH PREJUDICE** Defendants' Motion to Dismiss as to Bullock's Breach of Contract and Conversion claims.

## D.

### Real Estate Settlement Procedures Act Claims

#### *i.*

Bullock argues that Ocwen violated the RESPA deadlines for responses to his written correspondence.

RESPA contains a requirement that loan servicers must acknowledge receipt of a borrower's qualified written request ("QWR") within five business days[8] in writing, and must provide a written response to the borrower's QWR within thirty business days. However, the servicer may extend the time period for responding by 15 business days if, before the end of the 30 day period, the servicer notifies the borrower of the reasons for the extension in writing. *See* 12 U.S.C. § 2605; 12 C.F.R. §§ 1024.35(a), (d)-(e) (governing notices of error); 12 C.F.R. §§ 1024.36(a); (c)-(d) (governing requests for information).[9]

Bullock alleges that he sent a letter dated October 27, 2014 to Ocwen, requesting a "full explanation" as to why his loan modification request was denied and why Ocwen foreclosed rather than allow a short sale, requesting a certified copy of the promissory note and an opportunity to inspect it, and disputing all payments since October 2012 on the ground that Ocwen failed to modify his loan. He requested that Ocwen respond within 15 days of receiving his request. Amended Compl. ¶ 25. Ocwen attaches a copy of Bullock's October 27, 2014 letter with a date stamp of "OCT 31 2014". ECF No. 18-2.[10] Ocwen represents that it received Plaintiff's correspondence on October 31, 2014.

---

[8] By "business days," the Court refers to the statute's definition of "days" as exclusive of legal public holidays, Saturdays, and Sundays for purposes of calculating applicable deadlines.

[9] To trigger the loan servicer's RESPA duty to respond, the borrower inquiry must satisfy the standard for a QWR. Under RESPA, a QWR

> shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e).

[10] The Court may consider documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, the existence and contents of Ocwen's responses to Bullock's alleged QWR is the subject of Bullock's RESPA claim, and Bullock does not challenge the authenticity of Ocwen's date-stamped letter.

Bullock alleges he sent Ocwen a second letter dated December 10, 2014, in which he informed Ocwen of his view that Ocwen's failure to send him a certified copy of the note indicated that Ocwen was not the holder and that the foreclosure sale was therefore invalid. Amended Compl. ¶ 28. He also disputed Ocwen's credit reporting of delinquent information regarding mortgage payments from March 2013 to August 2014, and reiterated his request for an explanation of the denial of his loan modification request, further requesting "the information that was/is in [his] file and the information that was submitted to the investor" for the loan modification application. Finally, Bullock represented that he "[had] not received a mortgage statement from Ocwen" and requested that it "send [him] a mortgage statement that provid[ed]" certain information, and an explanation as to why Ocwen "ha[d] not provided a mortgage statement." *See id.*; ECF No. 18-3. Bullock alleges that Ocwen received his second letter on December 16, 2014. *Id.*

Bullock says that Ocwen did not respond to his first letter until December 17, 2014, when Ocwen's attorney sent a letter indicating that Ocwen was in the process of obtaining additional information and requesting an additional fifteen business days for a response to be sent. Amended Compl. ¶ 26. Ocwen has attached a copy of that letter dated December 16, 2014. ECF No. 18-4.

Bullock does not allege whether or not he received a response to his first letter within fifteen business days, but does submit that he did not receive a response from Ocwen to his second letter. *Id.* ¶ 29. Contrary to Bullock's representations, however, Ocwen has attached a letter to Bullock dated January 8, 2015, in which Ocwen, through counsel, wrote "for the

purpose of responding to [Bullock's] correspondence dated October 27, 2014 and December 10, 2014. ECF No. 18-5.[11]

The Court finds that Bullock has not plausibly alleged that Ocwen failed to respond to his QWRs within the 30 business day plus 15 business day timeframes specified in 12 U.S.C. § 2605 (e)(2), 12 C.F.R. §§ 1024.35(e), and 12 C.F.R. §§ 1024.36(d).

Ocwen received Bullock's first letter on October 31, 2014. Thirty business days after October 31, 2014 is December 16, 2014. Ocwen sent its "extension of time" letter on December 16, 2014. Fifteen business days after December 16, 2014 is January 8, 2015. Ocwen sent its "response" letter on January 8, 2015. Ocwen therefore complied with 12 C.F.R. §§ 1024.35(e) and 12 C.F.R. §§ 1024.36(d) as to the first letter.

Ocwen received Bullock's second letter on December 16, 2014. Thirty business days after December 16, 2014 is January 30, 2015. Ocwen sent its "response" letter on January 8, 2015. Ocwen therefore complied with 12 C.F.R. §§ 1024.35(e) and 12 C.F.R. §§ 1024.36(d) as to the second letter.

Bullock argues that the relevant deadlines under these regulations are the dates that Bullock *received* Ocwen's letter, rather than the date Ocwen *provided* the letter. But nothing in the text of the statute or the regulations so suggests, and it would make little sense to hold the servicer responsible for surmising how long it might take for mail to be delivered to different borrowers in different cities and states.

---

[11] Although Bullock, in his briefing, points out that he did not allege that he received the January 8th letter, ECF No. 21, at 9 n.5, the Court observes that Bullock <u>does not</u> allege that he never received the January 8th letter. Bullock at no point challenges the authenticity of the letter.

*ii.*

Bullock next argues that, even if Ocwen's January 8, 2015 "response" letter was timely, it did not adequately respond to qualified written requests contained in the two letters. *See* ECF No. 21, at 9. First, he says that Ocwen did not provide a "certified copy of the Note." Second, he says that Ocwen did not provide a date, time, and location to inspect the Note.  Third, he says that Ocwen did not provide "the information that was/is in my file and the information that was submitted to the investor." Fourth, he says that Ocwen did not indicate whether Ocwen and/or its affiliates service more than 5,000 mortgage loans.

The Court considers first whether any of these purported requests constituted a "qualified written request" ("QWR") under 12 U.S.C. § 2605(e)(1)(B).

A QWR requests information "relat[ed] to the servicing of [a] loan." § 2605(e)(1)(A). In order to qualify as a QWR, however, a request must meet several statutory requirements:

> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

§ 2605(i)(3); *Dides v. Ocwen Loan Servicing, LLC*, 2013 WL 2285371, at *2 (D. Md. May 21, 2013) ("[T]he permissible scope of [QWRs] under RESPA is limited to information related to the servicing of loans, specifically the receipt of payments from a borrower and the making of payments of principal and interest.") (citations omitted).

The Court finds that none of these four requests constitute Qualified Written Requests related to the servicing of loans, specifically the receipt of payments from a borrower and their application to principal or interest on the loan. Bullock's request for a certified copy of the note and a time to inspect the original plainly served as a communication challenging the validity of the loan, but it was not a communication relating to the servicing of the loan as defined by

statute. *See Ward v. Sec. Atl. Mortgage Elec. Registration Sys., Inc.*, 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012). Indeed, in his second letter, Bullock states that "[i]f Ocwen is not able to produce a certified copy of the note and/or provide an opportunity for me to inspect the Note, then obviously Ocwen is not in possession of the Note and therefore is not a "holder" of the Note . . . Consequently, the foreclosure sale was wrongful." ECF No. 18-3. Similarly, Bullock's request for "the information that was/is in my file and the information that was submitted to the investor" refers to Bullock's loan modification request that was rejected by Homeward. None of this amounts to a QWR, since a request for information about loan modification does not constitute a QWR. *E.g.*, *Van Egmond v. Wells Fargo Bank, N.A.*, 2012 WL 1033281, at *3 (N.D. Cal. Apr. 13, 2010) ("Defendant was not obligated to respond to any of Plaintiff's requests regarding his loan modification."). Finally, while Bullock's request for information about the size of Ocwen's loan portfolio arguably relates to "servicing" by Ocwen in general, such request does not qualify as a QWR because the inquiry does not relate to the servicing of <u>Bullock's</u> loan. *See* 12 U.S.C. § 2605(e)(1)(A) ("If any servicer of <u>a federally related mortgage loan</u> receives a qualified written request from the <u>borrower</u> [ . . . ] for information relating to the servicing of <u>such</u> loan") (emphasis added). Because none of these four requests constituted QWRs, the adequacy of Ocwen's response thereto is not governed by RESPA.

Bullock's fifth request fares little better. He argues that Ocwen's January 8, 2015 letter failed to adequately respond to his request for "a mortgage statement" that contained the following information: "(i) amount due, (ii) breakdown of amount due; (iii) transaction activity, (iv) contact information, (v) account information, and (vi) delinquency information." ECF No. 18-3. To be sure, such request would constitute a QWR, because it relates to the servicing of his loan. However, in its January 8, 2015 "response" letter, Ocwen provided a mortgage statement

that contained all of Bullock's requested information. Bullock quibbles that the statement Ocwen provided was the statement for May 2014, which did not include any information on Ocwen's claims as of January 2015. ECF No. 21, at 9 n.6. But Bullock did not ask for a January 2015 mortgage statement, or a "current" mortgage statement—rather, he asked for "a mortgage statement." While it might have been possible for Ocwen to send Bullock the latest mortgage statement as of the date of the request, the May 2014 statement that Ocwen did send reflected Ocwen's claims on the eve of the foreclosure sale. Given that Bullock's letter was primarily concerned with contesting the propriety of that sale, Ocwen's response was entirely reasonable. To the extent that a more recent statement might have been of interest, Bullock might have asked for it (instead of laying back, then attempting to challenge the entire foreclosure sale after the fact).

The Court finds that Bullock has failed to plausibly allege that Ocwen violated 12 U.S.C. § 2605(e)(2).

### *iii.*

Bullock goes on to allege that Ocwen did not send him an acknowledgement within 5 days of receipt of either of Bullock's letters, as required by 12 U.S.C. § 2605(e)(1)(A). The Amended Complaint states that Ocwen did not respond to Bullock's first letter dated October 27, 2014 until December 16, 2014, Amended Compl. ¶ 26. The date of receipt of Bullock's first letter (October 31, 2014) and the date of Ocwen's "extension of time" letter (December 16, 2014) is surely a period of time exceeding 5 business days. And Ocwen's January 8, 2015 "response" letter came more than 5 business days after receipt of Bullock's second letter on December 16, 2014. Ocwen does not attach any other "acknowledgement of receipt" letter. Accordingly, Bullock has plausibly alleged that Ocwen did not send the 5-day acknowledgement

of receipt rule required by 12 U.S.C. § 2605(e)(2), 12 C.F.R. § 1024.35(d) and 12 C.F.R. § 1024.36(c).

However, Bullock comes nowhere close to pleading actual damages, and offers only conclusory allegations that Ocwen's failure to send an acknowledgement of receipt within five days caused him harm.  His sole factual allegation as to damages is that "[a]s a result of the conduct, actions and inactions of Defendant Ocwen, Plaintiff suffered actual damages including out-of-pocket expenses and emotional/mental distress." Amended Compl. ¶ 78.  This is a classic example of grasping at straws. This Court finds Bullock's boilerplate assertion of "'damages without any supporting facts as to how [he was] damaged is insufficient to establish a claim for violation of RESPA.'" *See Davenport v. Wells Fargo Home Mortgage*, 2015 WL 4475467, at *2 n.2 (D. Md. July 17, 2015) (quoting *In re Ginn*, 465 B.R. 84, 95-96 (Bankr. D.S.C. 2012)).[12]

Bullock has failed to plausibly state a claim for relief based upon Ocwen's alleged violation of 12 U.S.C. § 2605(e)(2).

*iv.*

Bullock next alleges that Ocwen violated 12 U.S.C. § 2605(e)(3) by providing information to credit reporting agencies regarding his delinquent and/or overdue payments during the sixty days following Ocwen's receipt of Bullock's letters. Amended Compl. ¶ 76. This provision of RESPA states that "during the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency." 12 U.S.C.A. § 2605(e)(3)

---

[12] Nor does Bullock's boilerplate allegation that "Defendant Ocwen's violations were numerous and consistent, constituting a 'pattern or practice' of noncompliance with the requirements of 12 U.S.C § 2605 *et seq*." plausibly state a "pattern or practice" violation sufficient to state a claim for statutory damages.

Bullock alleges that in November 2014, he viewed his credit reports and observed that Ocwen was still reporting delinquent information with respect to payments from March 2013 to August 2014, *id.* ¶ 27, and that in his December 16, 2014 letter to Ocwen, he stated that the "derogatory credit reporting" was wrongful, and that he disputed said reporting, *id.* ¶ 28.

The relevant portion of Bullock's October 27, 2014 letter is as follows:

> My mortgage statement indicates that Ocwen "may report information about your account to credit bureaus." I am disputing all payments since October 2012 on the basis that Ocwen failed to modify my loan as it promised. Ocwen breached its promise and that caused any alleged delinquent payments.

ECF No. 18-2, at 2.

The relevant portion of Bullock's December 16, 2014 letter is as follows:

> Being that Ocwen is not a "holder" of the Note, Ocwen cannot enforce the Note and had no standing to declare the note in default. Consequently, the foreclosure sale was wrongful and in violation of state and federal law. Similarly, Ocwen's derogatory reporting of the account is inaccurate. To that point, since Ocwen is not a holder of the Note, I specifically dispute that I was delinquent to Ocwen from March 2013 to August 2014.

ECF No. 18-3.

These letters do not advance Bullock's case.

To state a claim for relief that would trigger the 60-day period of borrower protections specified in 12 U.S.C.A. § 2605(e)(3), Bullock would have to allege that he *sent a QWR relating to a dispute regarding his payments*. But fairly read, these letters are not QWRs; they dispute the payment of Bullock's loan only because Bullock took issue with Ocwen's failure modify his loan as promised and because he believed that the existing loan to be invalid and that Ocwen did not have standing to declare the loan in default. The fact that Bullock may have disputed his payments because of Ocwen's failure to modify his loan and because he believed Ocwen lacked

standing to declare the loan in default does not thereby transform the communication into QWRs relating to a dispute regarding what was due on the existing loan.

Bullock has failed to plausibly state a claim for relief based upon Ocwen's alleged violation of 12 U.S.C. § 2605(e)(3).

## E.

### Declaratory Judgment

The Amended Complaint contains a demand for relief (styled as a cause of action) for a declaratory judgment that a) none of the Defendants is the holder of the note, b) none of the Defendants has a right to foreclose, and c) none of the Defendants has a right to assess interest, fees, and costs because they were not in possession of the original note. Amended Compl. ¶¶ 80-84. The Court rejects the request.

Under the Anti–Injunction Act, 22 U.S.C. § 2283, a court may not grant "an injunction to stay the proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Where the Anti–Injunction Act bars an injunction, it also bars the issuance of a declaratory judgment that would have the same effect as an injunction. *See Tucker v. Specialized Loan Servicing, LLC*, 2015 WL 452285, at *2 (D. Md. Feb. 3, 2015) (citing *Denny's, Inc. v. Cake*, 364 F.3d 521, 528 n.8 (4th Cir.2004). For example, if a plaintiff requests a declaration that the plaintiff's mortgage and note are unenforceable, the request preempts the foreclosure and has the same effect as a request for an injunction to prevent foreclosure; both result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid. *Id.* (citing *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)).

The Court **DENIES** Bullock's request for a declaratory judgment.

**F.**

**Proposed Second Amended Complaint**

In his Proposed Second Amended Complaint, Bullock has conjured up a whole new series of purported misdeeds by Defendants, none of which are pleaded with specificity and all of which are of doubtful validity. There is little question that Bullock (and/or whomever may be ghostwriting his pleadings) is intent on going after Defendants more or less in perpetuity. However, the toll on Defendants as well as the Court in the face of such a holy war is considerable and is only to be countenanced if Bullock can fairly demonstrate a bona fide commitment to correcting what he can plausibly affirm (which he has yet to do) some basis in law and fact for his claims.

Accordingly, for the present, the Court will spend no more time and effort addressing Bullock's rolling grievances against Defendants. The First Amended Complaint will be dismissed with prejudice as to all but the TILA claim, which Ocwen may address on a renewed Motion to Dismiss or on a Motion for Summary Judgment. Accordingly, the Motion for Leave to file a Second Amended Complaint will be **DISMISSED WITHOUT PREJUDICE**. But this is not to imply that any of the newly proposed allegations in the Second Amended Complaint are valid, only that Bullock will have to pursue them in a separate proceeding, as to which Defendants may file appropriate responses.

**IV**.

For the foregoing reasons, Defendants' Motions to Dismiss the Amended Complaint, ECF Nos. 17, 18, are **GRANTED-IN-PART** and **DENIED-IN-PART**. Deutsche Bank's Motion to Dismiss the Amended Complaint, ECF No. 18, is **DENIED WITHOUT PREJUDICE** as to the TILA Claim, and Defendants' Motions to Dismiss the Amended Complaint, ECF Nos. 17,

18, are **GRANTED WITH PREJUDICE** as to all other claims. Bullock's Motion to Strike, ECF No. 23, is **DENIED**. Bullock's Motion for Partial Summary Judgment, ECF No. 24, is **MOOT**. Defendants' Motions to Dismiss the Complaint, ECF Nos. 11, 13, are **MOOT**. Bullock's Motion for Leave to File Second Amended Complaint, ECF No. 27, is **DENIED WITHOUT PREJUDICE**. If Bullock wishes to purse the claims contained in his proposed Second Amended Complaint, he must file a new action in this Court.

A separate Order will **ISSUE**.


_____
                             **/s/**
                    **PETER J. MESSITTE**
              **UNITED STATES DISTRICT JUDGE**

**August 20, 2015**