FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

2016 APR 18  P 12: 49

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

| | | |
|---|---|---|
| **TROY BULLOCK,** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No.: **PJM 14-3836** |
| | * | |
| **OCWEN LOAN SERVICING, LLC et al.** | * | |
| | * | |
| Defendant | * | |
| | * | |

## MEMORANDUM OPINION

Troy Bullock brought this suit, ostensibly *pro se*[1], against Defendants Ocwen Loan

Servicing, Homeward Residential, Inc., and Deutsche Bank National Trust Co ("Deutsche

Bank"). The Court granted in part Defendants' Motion to Dismiss, ECF No. 18, as to all claims

against both defendants, save a single claim under the Truth-in-Lending Act, 15 U.S.C. § 1641 *et*

*seq.* ("TILA") against Deutsche Bank. Deutsche Bank now moves for summary judgment as to

that claim.[2] Since the Court finds that the TILA provision at issue was not yet in effect when

Bullock's promissory note was transferred to Deutsche Bank, the Court will **GRANT** Deutsche

Bank's Motion for Summary Judgment. ECF No. 40.[3]

---

[1] Defendants allege that Bullock may be receiving legal assistance in this matter from a *non*-attorney
named Thomas Alston, in the form of ghostwritten pleadings. Alston has a history of filing ghostwritten
pleadings in this Court. *See, e.g., Alston v. Creditors Interchange Receivable Mgmt., LLC*, 2012 WL
4370124, at *1 (D. Md. Sept. 21, 2012) (Chasanow, C.J.) (vacating orders to proceed in forma pauperis,
entering judgment against plaintiff for costs and judgments in eleven cases filed by Alston alleging Fair
Credit Reporting Act claims). The Court's review of the subject matter and style of the present pleadings
and prior Alston cases strongly suggests that Alston may indeed be involved in the instant case.
[2] The Motion for Summary Judgment was filed by all Defendants, although the one remaining claim
under the Truth in Lending Act was only alleged against Deutsche Bank. *See* Defs.' Mot. Summ. J., ECF
No. 40.
[3]The Court will also deny Bullock's recent Motion to Alter or Amend its Order granting the Motion to
Dismiss. *See also* n.6 *infra*.

**I.**

According to the Amended Complaint,[4] Bullock executed a Note and Deed of Trust in favor of Option One Mortgage Corporation with respect to residential property located at 13302 Williams Drive in Brandywine, Maryland. Amend. Compl. ¶ 7. According to the Affidavit ("Aff.") of Crystal Kearse of Ocwen Financial Corporation, the terms of the loan were memorialized in the Note, which was identified by a loan number ending in 7991. Defs.' Mot. Summ. J., Ex. 1, Adjustable Rate Note, ECF No. 40-3; Defs.' Mot. Summ. J., Kearse Aff. ¶¶ 5, 7, ECF No. 40-2. The principle amount of the Note was $213,750. *Id.* The deed of trust, dated March 15, 2006, which was recorded among the Land Records of Prince George's County on October 27, 2006 (the "Deed of Trust"), Kearse Aff. ¶ 6, was also identified by a loan number ending in 7991. *Id.* ¶ 7. Bullock made payments on the loan from 2006 to 2012. Amend. Compl. ¶ 8, ECF No. 16.

Further, per the Kearse Affidavit, on or about May 12, 2006, Bullock's mortgage loan was securitized in a pool of loans, wherein Deutsche Bank was designated as trustee of a securitized trust denominated "Soundview 2006-OPT2." Kearse Aff. ¶ 8. The Pooling and Servicing Agreement[5] (the "Pooling and Servicing Agreement") defines the Custodian of the Pooling and Servicing Agreement as Wells Fargo Bank, N.A. ("Wells Fargo"). *Id.* ¶ 9. Kearse states that Wells Fargo received the original Note on March 24, 2006. *Id.* ¶ 10. Pursuant to the Pooling and Servicing Agreement dated May 1, 2006, Bullock's note was included among the pool of loans acquired by Deutsche Bank on or before May 12, 2006. *Id.* ¶ 11. Wells Fargo's records demonstrate that Bullock's Note was included among the pool of loans acquired by

---

[4] The Court denied without prejudice Bullock's Motion for Leave to File Second Amended Complaint, indicating that Bullock would need to file a new action in order to pursue the claims proposed. ECF Nos. 33, 34.

[5] *See* Pooling and Servicing Agreement, a document available on the Securities and Exchange website, at http://www.sec.gov/Archives/edgar/data/1359053/000088237706001941/d501480_ex4-1.htm.

Deutsche Bank on or before May 12, 2006 and that Deutsche Bank has been in possession of the Note since March 24, 2006. *Id.*

Homeward Residential was the loan servicer for a period beginning at least as early as 2012. *See* Amend. Compl. ¶¶ 9-13, ECF No. 16. On March 1, 2013, Homeward transferred servicing to Ocwen. *Id.* ¶ 15.

On January 15, 2014, Sand Canyon Corporation f/k/a Option One Mortgage Corporation executed an assignment of the Deed of Trust to Deutsche Bank. Defs.' Mot. Dismiss, Ex. C, Assignment of Deed of Tr. Md., ECF No. 11-4. The assignment was recorded in the Land Records of Prince George's County, Maryland at Liber 35549, folio 344 *et seq.* (the "Assignment"). *Id.*

Ocwen's counsel filed a foreclosure action on the subject property on February 14, 2014 and a foreclosure sale was held on July 1, 2014. Amend. Compl. ¶ 20; Defs.' Mot. Dismiss, Ex. 3, Report of Sale, ECF No. 17-3. The foreclosure sale was ratified on April 8, 2015. Approximately one month following completion of the foreclosure sale, the trustees of the Deed of Trust conveyed the Property to Deutsche Bank, pursuant to a Trustee's Deed dated April 10, 2015 and recorded among the Land Records of Prince George's County, Maryland on April 27, 2015 at Liber 36917, folio 411 *et seq.* Defs.' Mot. Summ. J. at 4, ECF No. 40-1.

Prior to that time, on October 20, 2014 Bullock had filed the present suit in the Circuit Court for Prince George's County, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 *et seq.*, the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13-101 *et seq.*, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, and common law breach of contract and conversion. Defendants removed the suit to this Court on December

9, 2014 and moved to dismiss Bullock's then operative Amended Complaint. By Memorandum

Opinion and Order dated August 20, 2015, the Court dismissed with prejudice all but one of

Bullock's claims. ECF Nos. 33, 34. The Court denied Defendants' Motion without prejudice as

to a single claim under the Truth-in-Lending Act, 15 U.S.C. § 1641 *et seq.* ("TILA") and gave

Deutsche Bank leave to file a further Motion to Dismiss or a Motion for Summary Judgment.

ECF Nos. 33, 34. The Court denied Bullock leave to file a Second Amended Complaint without

prejudice, stating that he would need to file a new suit to add the proposed claims. *Id.* Bullock

then filed a Rule 59(e) Motion to Alter or Amend the Court's Dismissal of his claims for breach

of contract, conversion, and violations of RESPA, which the Court has already denied.[6] ECF No.

38. There is no indication that Bullock even filed a new suit.

---

[6] The Court will **DENY** Bullock's Rule 59(e) Motion as untimely. However, even if the Motion had been timely, his claims were nevertheless properly dismissed. As the Court found, Bullock's claims for breach of contract and conversion in the Amended Complaint epitomized the kind of threadbare recital of the elements of a cause of action that runs afoul of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Regarding the RESPA claim, although Bullock is correct that 12 C.F.R. § 1024.36 expanded the definition of the type of Information Requests requiring a response, the Court finds that Ocwen complied with the expanded definition under 12 C.F.R. § 1024.36 in its January 8, 2015 response letter. Section 1024.36 explicitly exempts servicers from responding to "overbroad or unduly burdensome information requests," 12 C.F.R. §1024.36(f)(1)(iv), which include the use of Information Requests as a "forum for pre-litigation discovery." *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act, 78 Fed. Reg. 10,696, 10,761 (Feb. 14, 2013). Ocwen answered Bullock's two letters by explaining why it did not approve a short sale or loan modification and by providing a copy of the Note and a copy of a mortgage account statement. Defs.' Mot. Dismiss, Ex. D, January 8, 2015 Letter to Bullock from Ocwen's Counsel, ECF No. 18-5. Although Bullock alleged that Ocwen's response did not sufficiently answer his request, the clear purpose of Bullock's Information Request was to challenge to the foreclosure that took place on his property. Defs.' Mot. Dismiss, Ex. B, Dec. 10, 2014 Letter to Ocwen from Bullock, ECF No. 18-3 ("If Ocwen is not able to produce a certified copy of the Note . . . then obviously Ocwen is not in possession of the Note."). While Bullock also asserts that Ocwen failed to provide "the information that was/is in my file and the information that was submitted to the investor" related to his denied loan modification, *see id.*, Ocwen explained that the loan modification request was "declined because you failed to provide sufficient documentation showing that the [salary] bonus you received was a one-time bonus" and invited Bullock to submit additional documentation. *See* January 8, 2015 Letter to Bullock from Ocwen's Counsel, ECF No. 18-3. Thus, Ocwen adequately responded to Bullock's Information

In its present Motion for Summary Judgment on the TILA claim, ECF No. 40, Deutsche Bank affirms that the undisputed material facts show that Bullock's loan was among a number of loans securitized and transferred to it pursuant to the Pooling and Servicing Agreement that closed on May 12, 2006. Kearse Aff. ¶ 11. Because the applicable TILA section did not come into effect until 2009, over three years later, Deutsche Bank argues that the TILA claim fails as a matter of law.

Bullock has not responded to Deutsche Bank's Motion for Summary Judgment.

The Court agrees with Deutsche Bank.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine dispute is one where the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A material fact is one "that might affect the outcome of the suit under governing law." *Erwin v. United States*, 591 F.3d 313, 320 (4th Cir. 2010) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When assessing a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in his or her favor. *Dulaney*, 673 F.3d at 330. A nonmoving party may not, however, defeat summary judgment by making assertions lacking sufficient factual support or by relying on a mere "scintilla of evidence." *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009). A party opposing a properly supported motion for summary judgment bears the burden of establishing a genuine issue of material fact on each essential

Request, insofar as it was not overbroad and unduly burdensome, and therefore complied with the requirements of 12 C.F.R. § 1024.36.

element of its case. *Anderson*, 477 U.S. at 248–49; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The party opposing summary judgment "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).

### III.

Under TILA, 15 U.S.C. § 1641(g), third parties who assume a mortgage loan, and thereby become a new creditor, must disclose the assignment to the borrower in writing by a certain date. However, this requirement applies only to loans transferred on or after May 20, 2009. *See Ward v. Branch Banking & Trust*, No. 13-1968, 2015 WL 4661851, at *5 (D. Md. Aug. 4, 2015) ("Judges in other federal district courts have consistently held that the provision does not apply retroactively – that is, it applies only to transfers that occurred after the effective date of the amendment, May 20, 2009.") (citing *Bradford v. HSBC Morg. Corp.*, 829 F. Supp. 2d 340, 353 (E.D. Va. 2011)); *accord Angelini v. Bank of Am.*, No. 11-3011, 2011 WL 2433485, at*5 (D. Or. Apr. 27, 2011); *Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12-2106, 2015 WL 3966119, at *4 (S.D. Cal. June 30, 2015); *Craig v. Bank of New York Mellon Corp.*, No. 10-4438, 2014 WL 1347225, at *10 (E.D.N.Y. Mar. 31 2014).

In his TILA claim, Bullock alleges that the underlying loan was contemporaneously assigned with the Deed of Trust – in other words, that the debt was assigned to Deutsche Bank in December 2013. Amend. Compl. ¶ 18. Based on this assertion, Bullock argues that Deutsche Bank violated TILA by not notifying him that the ownership of the loan had been transferred to it in 2013. *Id.* ¶ 37. Deutsche Bank counters that the assignment of the debt actually occurred in

2006, when the Note was transferred to it. Because the transfer of the Note pre-dates the relevant amendment, says Deutsche Bank, TILA is inapplicable in this case.

Bullock is incorrect as a matter of law that underlying debt necessarily transferred with the assignment of the Deed of Trust.[7] *See Barr v. Flagstar Bank, F.S.B.*, 2014 WL 4660799, at *2 (D. Md. Sept. 17, 2014) (holding that § 1641(g) requires the assignment or transfer of at least the underlying debt and that the assignment of the Deed of Trust alone does not trigger disclosure). As a result, the only question is whether there is a genuine dispute of material fact as to the date the Note was transferred to Deutsche Bank.

Deutsche Bank has provided evidence that it was not a new creditor in 2013 because the assignment of the Note actually occurred in 2006. According to the Pooling and Servicing Agreement, Deutsche Bank became the "Trustee" of a pool of loans on or before May 12, 2006. Defs.' Mot. Summ. J., Ex. 2, Kearse Aff. ¶ 8, ECF No. 40-2. While the Pooling and Servicing Agreement is not explicit that Bullock's note was among the hundreds of loans included in that securitization, Deutsche Bank has established this fact by means of the affidavit of Crystal Kearse, the Senior Loan Analyst for Ocwen Financial Corporation, whose indirect subsidiary, Ocwen Loan Servicing LLC, is the current servicer for Bullock's mortgage loan. Defs.' Mot. Sum. Judg., Ex. 2, Kearse Aff. ¶ 1, ECF No. 40-2. Kearse's affidavit states that Bullock's Note was in fact included among the pool of loans acquired by Deutsche Bank on or before May 12, 2006. *Id.* ¶ 11. While Deutsche Bank is designated as the "Trustee for Soundview Home Loan Trust 2006-OPT3," Wells Fargo Bank, N.A. ("Wells Fargo"), was indicated as the "Custodian"

---

[7] *Svrcek v. Rosenberg*, 203 Md. App. 705, 727 (2012) (because the enforcement of the Deed of Trust hinges on the transfer of the Note itself, the "assignment of the deed of trust . . . is of no consequence . . . ."); *accord Anderson v. Burson*, 424 Md. 232, 246 (Md. 2011) (holding that a deed of trust securing a negotiable promissory note "cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust") (citing *Le Brun v. Prossise*, 197 Md. 466 (1951)).

of the Agreement. *See* Pooling and Servicing Agreement; Kearse Aff. ¶ 9. Thus, Wells Fargo retained the collateral file of the securitized loans, which included Bullock's and shows that his original Note was obtained on March 24, 2006. Kearse Aff. ¶ 10. Furthermore, the 2013 Assignment of the Deed of Trust from Option One to Deutsche Bank indicates that Deutsche Bank was receiving the Deed of Trust "as the trustee for Soundview Home Loan Trust 2006-OPT3, Asset-Backed Certificates, Series 2006-OPT3," Defs.' Mot. Dismiss, Ex. C, Assignment of Deed of Tr. Md., ECF No. 11-4. This would be consistent with Deutsche Bank's representation that Bullock's note was among those transferred to Deutsche Bank in 2006.

Bullock, as noted, has failed to respond to the Deutsche Bank's Motion for Summary Judgment or provide any evidence to the contrary.

Accordingly, the Court finds that there is no genuine dispute of material fact that the transfer of the Note to Deutsche Bank occurred in 2006, prior to the effective date of TILA, 15 U.S.C. § 1641(g). Since this provision of TILA is inapplicable, Deutsche Bank is entitled to summary judgment as a matter of law.

## IV.

Accordingly, the Court **GRANTS** Deutsche Bank's Motion for Summary Judgment, ECF No. 40, and **ENTERS** final judgment in its favor and against Bullock.

A separate Order will **ISSUE**, closing the case.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

April 15, 2016